## MANISCHEWITZ FOOD PRODUCTS, Inc. v. ROSENBERG.

### No. 8730.

United States District Court
E. D. Pennsylvania.

Jan. 14, 1949.

Hyman Zuckerman, of Goff & Rubin, Philadelphia, Pa., for plaintiff.

Maurice Pollon, Philadelphia, Pa., for defendant.

GANEY, District Judge.

This case arises upon a motion to dismiss the complaint in an action for injunctive relief. Such relief is sought to prevent irreparable injury to plaintiff's good will and name in connection with its business. Jurisdiction of this court is based on the existence of diversity of citizenship between the parties and the involvement of the statutory sum of Three Thousand Dollars ($3,000).[1]

The complaint, in substance, states as follows: Plaintiff, a New York corporation, is engaged in the distribution and sale of various food products prepared

---

[1] Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821; Bitterman v. Louisville & Nashville Railroad, 207 U.S. 205, 225, 28 S.Ct. 91, 52 L.Ed. 171, 12 Ann.Cas. 693; Reed, Fears & Miller v. Miller, D.C.E.D.Pa., 2 F.

in strict accordance with the Jewish dietary laws which are commonly referred to as kosher. It has acquired, among those people who believe in the Jewish Religion in this country, an excellent reputation, not only for its rigid observance of the Jewish dietary laws in the preparation of food products, but also for the high quality of those products sold and distributed under its label. On November 12, 1946, it licensed Food Canners Corporation, under a royalty agreement, to can and sell kosher food products under its label, provided certain conditions[2] were met. At the time, Food Canners had its business establishment in Philadelphia, Pennsylvania. On or about May 19, 1948, an involuntary petition in bankruptcy was filed against Food Canners. Shortly prior to the filing of that petition, a warehouse company was in possession of and held a lien upon eleven hundred fifty (1150) cases of canned soups belonging to Food Canners. All the cans of soups were marked kosher and bore the plaintiff's label. The eleven hundred fifty (1150) included five hundred twenty five (525) cases of tomato soups which plaintiff had rejected when canned by Food Canners as not being kosher and not measuring up to the standard provided for under the royalty contract. The warehouse company sold the eleven hundred fifty (1150) cases to a third person who in turn sold them to defendant. At present the defendant intends to sell them at prices far less than those currently obtaining in the open market for similar products.

Plaintiff, therefore, seeks to restrain him from selling the five hundred twenty five (525) cases of tomato soup under its name and label, and the remaining cases at distress prices. The reason for defendant's motion is that no violation of any right owed by him to the plaintiff has been pleaded in the complaint.

■ The public policy of Pennsylvania is not opposed to the license of trade marks and names. See Miller v. Billington, Com.Pl., 6 Dist. 335, modified 184 Pa. 583, 39 A. 494, affirmed 194 Pa. 452, 45 A. 372; Winsor v. Clyde, Com.Pl., 9 Phila. 513, 29 Leg.Int. 172. But we feel that such policy extends only to a license which "maintains the integrity of the name or mark by insuring the continuity of its relationship with the business and good will with which it has been used."[3] The royalty agreement in the instant case gave the plaintiff sufficient power to maintain the integrity of its label. Whether Food Canner's use of the label did in fact work a deception upon the consuming public, and plaintiff failed to take reasonable precautions to exercise its powers under the license agreement is another question. Under a motion to dismiss the complaint we must assume the contrary.

■ As for the use of the word kosher on the five hundred twenty five (525) cases of tomato soup which were not prepared in accordance with the Jewish dietary laws, an Act[4] makes it an offense for misusing the word kosher in connection with the selling, or exposing for

---

2d 280, affirmed 3 Cir., 5 F.2d 1018; Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, D.C.E.D.Pa., 20 F. Supp. 703; Caron Corporation v. Wolf Drug Co., D.C.N.J., 40 F.Supp. 103.

[2] Among others, some of these conditions were: The license was restricted to the continent of North America for a limited period of time; plaintiff was to designate a Rabbi or Rabbis to supervise all the processes at Food Canners' expense; the selling price was to be in accordance with all regulations in effect and in line with competitive prices; all food products were to be of the first quality and substantially like samples submitted to the plaintiff; at Food Canners' expense, plaintiff could designate inspectors to make reports on the preparation and ingredients used in prepar-

ing the food products; advertisement and labels for such products were to be approved by plaintiff; rights under the agreement were not assignable without plaintiff's consent; agreement to terminate immediately upon Food Canners' bankruptcy or assignment of its assets for benefit of creditors; under certain terms, the agreement could be extended for a period of four years; and terms of the agreement were to be construed under the laws of the State of New York. On March 21, 1947, the agreement was extended for the four year term.

[3] 1 Nims, Unfair Competition and Trade Marks (4th Ed. 1947) Sec. 22, p. 124. Also see 1 Callmann, Unfair Competition & Trade Marks (1945) Sec. 78.2.

[4] Act of June 24, 1939, P.L. 872, § 864, 18 P.S. § 4864.

sale, of food products. If, which we must presume to be the case, the cans of tomato soup were not kosher, the above Act should be a sufficient deterrent to the defendant's use of that designation on those cans of soup.

From the meager facts appearing in the complaint, it seems that plaintiff might have a cause of action under the Act[5] relating to the sale or resale of products bearing the label or trade mark of.the producer and/or under the Unfair Sales Act.[6] Plaintiff may not, at the trial, be able to prove a case under either of the mentioned Acts, or the defendant might have a complete defense thereunder which does not appear in the complaint. But these are matters of proof which must await the trial.

That the complaint does not set forth all the facts which would entitle the plaintiff to relief is not, except in a few classes of cases not·relevant here, reason for sustaining a motion to dismiss. Hess et al. v. Factors Corporation, D.C.E.D.Pa., 80 F.Supp. 727; 2 Moore, Federal Practice, 2nd Ed., Sec. 12.08.

Motion denied.

---

[5] Act of June 5, 1935, P.L. 266, §§ 1–5, as amended, 73 P.S. §§ 7–11. Also see 2 Nims, supra note 2, Sec. 300.

[6] Act of August 11, 1941, P.L. 900, §§ 1–7, 73 P.S. §§ 211–217. Also see 2 Call-mann, supra, note 3, Sec. 78.2, and the same author's monograph on Unfair Competition, pp. 56–61 (Pub. by General Practice Series 1946, Practicing Law Institute).